UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Allen Rheaume,

    Plaintiff,

v.                                                                                              Case No. 1:10-CV-318

Robert Hofmann, Sandra
Olberg, Tammy Kennison,
and Jerri Brouillette,

    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 11 and 17)

    Plaintiff Allen Rheaume, a Vermont inmate proceeding *pro se*, brings this action claiming that his conviction for violation of probation was based upon false testimony by a probation officer. Defendants include probation officer Jerri Brouillette, probation supervisors Sandra Olberg and Tammy Kennison, and former Vermont Department of Corrections Commissioner Robert Hofmann. Defendants now move to dismiss the Complaint, arguing: (1) that the claims against them in their official capacities are barred under the Eleventh Amendment, (2) that Rheaume has failed to allege facts to support his claims of supervisory liability, and (3) that Rheaume's claims regarding the truthfulness of Brouillette's testimony are barred by the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994), since if proven true, those claims would necessarily invalidate his conviction.

For the reasons set forth below, I recommend that the motion to dismiss be GRANTED, and that this case be DISMISSED without prejudice.

**Factual Background**

The Complaint alleges that between December 2005 and August 2007, Rheaume was on probation under Brouillette's supervision. On August 10, 2007, Rheaume failed a drug test and was returned to prison. He was subsequently charged with violation of probation, based upon allegations of illegal drug use and a failure to participate in counseling. On January 30, 2008, after a merits hearing at which Brouillette was the sole witness, the state court concluded that Rheaume had violated the terms of his probation and revoked his probation status. (Doc. 6-3.)

Rheaume now claims that the drug testing performed on August 10, 2007 was not in compliance with DOC policies. He also alleges that during the probation violation hearing, Brouillette lied under oath about which policies applied, and about whether she needed approval from a supervisor before conducting testing. Rheaume further claims that Brouillette perjured herself when she testified that the drug test was his fourth drug use violation. Rheaume submits that it was only his second such violation.

With regard to substance abuse counseling, Rheaume challenges Brouillette's testimony that his counseling was under the direction of the Vermont Probation Department. Rheaume claims that his counseling was part of a "CRASH" program, was not directed by the Probation Department, and that the program was voluntary. He also claims that he was charged with missing class on a date when no class was scheduled.

Defendants Olberg and Kennison are alleged to have been Brouillette's supervisors.  Rheaume claims that these Defendants failed to properly train and supervise Brouillette, and that together with former Department of Corrections Commissioner Robert Hofmann, acted "in concert and individually encouraged, ratified in the action described above and in the pursuance of a common plan . . . singl[ed] out the Plaintiff for harsh, arbitrary, and discriminatory treatment with regards to" drug testing and substance abuse counseling.  (Doc. 5 at 5.)  For relief, Rheaume is seeking monetary damages.

## Discussion

I.   **Motion To Dismiss Standard**

Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a motion to dismiss. 129 S. Ct. at 1950.  First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.* at 1949-50.  A court must then determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S.

3

at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In reviewing the complaint in this case, the Court notes that because the plaintiff is proceeding *pro se*, it must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## II.    Eleventh Amendment Immunity

Defendants first argue that, as State of Vermont employees, they are each entitled to immunity under the Eleventh Amendment to the extent that they are being sued in their official capacities. The Eleventh Amendment has repeatedly been construed as barring a citizen from bringing a suit against his or her own state in federal court. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). A state may waive its Eleventh Amendment immunity, but the waiver must be unequivocally expressed. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). Additionally, Congress may abrogate the Eleventh Amendment, but only by an "unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" *Halderman*, 465 U.S. at 99 (1984) (quoting *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).

Here, there has been no waiver by the State of Vermont, and no congressional abrogation. Indeed, the Supreme Court has held that Congress did not intend to abrogate sovereign immunity by enacting § 1983, *see Quern*, 440 U.S. at 340–41, and the State of

4

Vermont has expressly preserved its sovereign immunity under the Eleventh Amendment. *See, e.g.,* 12 V.S.A. § 5601(g). Therefore, Rheaume's constitutional claims for damages brought against Defendants in their official capacities should be DISMISSED. *See Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) ("The Eleventh Amendment likewise bars [plaintiff] from pursuing a claim for damages against the individual defendants in their official capacities."); *see also Heba v. N.Y. State Div. of Parole*, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007); *Tolliver v. N.Y. State Correctional Officers*, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000).

### III. Personal Involvement

Defendants next contend that all claims against the supervisory Defendants – Hoffman, Olberg and Kennison – should be dismissed for failure to state a claim. Citing the Second Circuit standard for supervisory liability in § 1983 claims, Defendants argue that the Complaint fails to allege sufficient personal involvement by any of these Defendants, and that Rheaume's claims must therefore be dismissed.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a cause of action under § 1983 against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (*i.e.*, under the doctrine of *respondeat superior*) is insufficient to show his or

5

her personal involvement. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

While *respondeat superior* is not a viable theory in a § 1983 claim, supervisory personnel may nonetheless be considered "personally involved" if a plaintiff can show: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to plaintiff's rights by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)).[1]

In this case, Rheaume focuses his claim on the alleged misconduct of Defendant Brouillette. The primary allegations against Defendants Olberg and Kennison are that they failed to properly train and supervise Brouillette. Former DOC Commissioner

---

[1] In *Iqbal*, the Supreme Court ruled that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 129 S. Ct. at 1948. This ruling has led several courts to conclude that only some of the *Colon* factors remain viable. *See, e.g., Bellamy v. Mt. Vernon Hosp*, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009). Other courts have held that the personal involvement requirements for supervisors, post-*Iqbal*, depend "on the constitutional provision alleged to have been violated," and that *Iqbal* most directly applies to intent-based constitutional claims (*e.g.* racial discrimination). *See Qasem v. Toro*, 737 F. Supp. 2d 147, 151 (S.D.N.Y. 2010); *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009). For purposes of this case, particularly because it does not allege the sort of intentional discrimination addressed in *Iqbal*, I will assume that all of the *Colon* factors still apply.

6

Robert Hofmann is named because of his general responsibility for the actions of all DOC employees.

None of the allegations against these Defendants satisfy the criteria set forth in *Colon*. Specifically, there is no allegation in the Complaint that, once notified of a problem, the supervisor Defendants failed to remedy the alleged wrong. Nor is there any suggestion that Brouillette's actions were the result of a policy or custom. Rheaume does not allege gross negligence, and as discussed below, his claims of deliberate indifference are entirely unsupported.

Rheaume does claim that he filed a series of grievances with his prison, with "St. Albans Probation and Parole," and with the Commissioner's Central Office. (Doc. 25 at 6.) However, there is no indication in the Complaint, or in the many supplemental exhibits submitted to the Court, that any of the named Defendants received such grievances, were involved in the grievance process, or were otherwise aware of Brouillette's alleged conduct. Moreover, it is widely held that the mere filing of a grievance is not enough to create supervisor liability. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Smart v. Goord*, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006).

The only claim of direct involvement by the supervisory Defendants is that they acted "in concert" with Brouillette and "individually encouraged" her actions "in the pursuance of a common plan and design, with deliberate indifference . . . ." Such conclusory allegations, without any factual support, are insufficient to survive a motion to dismiss. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will

7

not suffice to prevent a motion to dismiss.") (internal quotation omitted); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The claims against Defendants Hofmann, Olberg and Kennison should therefore be DISMISSED.

IV.   *Heck v. Humphrey*

Defendants' final argument is that Rheaume's claims are barred by the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a plaintiff cannot use a § 1983 action to expressly or implicitly challenge the validity of a conviction or sentence unless such conviction or sentence had already been reversed, called into doubt by the issuance of a habeas corpus petition, or otherwise invalidated. 512 U.S. at 486-87. "[T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the [§ 1983] complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

The Second Circuit has noted that the *Heck* decision "does not bar a § 1983 action that, at most, increases the likelihood that a plaintiff will eventually be able to overturn a still-outstanding conviction, but which does not go so far as to necessarily demonstrate the conviction's invalidity." *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007). Accordingly, "the proper inquiry is whether 'victory for the prisoners [would] necessarily [mean] immediate release or a shorter period of incarceration.'" *Id.* (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 80 (2005)). The principles set forth in *Heck* and its progeny have been applied in the context of parole revocations, and thus apply here. *See, e.g., Bierley v. Dombrowski*, 309 F. App'x 594, 597 (3d Cir. 2009) (holding that inmate's claim

8

challenging revocation of parole and subsequent imprisonment barred by *Heck* where inmate did not allege that parole revocation decision was overturned or declared invalid) *Sumter v. Marion*, 1999 WL 767426, at *5 (S.D.N.Y. Sept. 28, 1999) (dismissing § 1983 claim because to find in plaintiff's favor would require finding that defendants falsified evidence at the revocation hearing, thus invalidating the result); *Sealey v. Fishkin*, 1998 WL 1021470, at *5 (E.D.N.Y. Dec. 2, 1998) (dismissing § 1983 claim alleging police officer made false statements to parole officials, ultimately leading to parole revocation).

In litigation brought by Rheaume prior to the instant case, this Court fully considered the very same claims he brings here, and concluded that dismissal without prejudice was required under *Heck*. *See Rheaume v. Hofmann*, 2008 WL 2705068, at *3 (D. Vt. July 9, 2008). In a Report and Recommendation that was subsequently adopted by the Court, Magistrate Judge Niedermeier found that

> Rheaume is clearly challenging the validity of his probation revocation. He first claims that Brouillette failed to follow proper procedures during drug testing. He next alleges that his probation was revoked based upon conduct that was not prohibited in the probation order. Finally, he claims that Brouillette made false statements that resulted in his re-incarceration. If Rheaume were to prove that these factual allegations are true, his success would necessarily call into question the validity of his conviction.

*Id.* The Court also noted that Rheaume did not allege "that he has established the invalidity of his parole revocation in an appropriate state or federal proceeding," and that until he "can show that his probation violation has been reversed, expunged, or declared invalid, he has no cognizable claim under § 1983." *Id.*

Judge Niedermeier's analysis still applies today. A review of the transcript from Rheaume's probation violation hearing (Doc. 6-3) reveals that Brouillette's testimony

provided the primary basis for the conviction, as it was the only testimony offered by either side. To challenge the truthfulness and factual accuracy of that testimony would, as the Court concluded previously, necessarily call into question the validity of that conviction.

Furthermore, Rheaume has failed to show that his conviction has been declared invalid. At the time of the prior case, his filings implied that he was pursuing relief in the state courts. *Id.* at *4. The record in the current case confirms that he voluntarily dismissed two state court actions. (Docs. 17-1, 17-2.) Rheaume also appealed his conviction to the Vermont Supreme Court, without success (Doc. 6-13), and is seeking habeas corpus relief under 28 U.S.C. § 2254 in this Court. *See Rheaume v. Pallito*, Case No. 2:11-cv-38 (Doc. 4). It thus appears that his conviction remains valid, and that under *Heck*, he cannot bring a § 1983 action that would necessarily call the validity of that conviction into question.

Disposition of a case on *Heck* grounds "warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's conviction be expunged by executive order, declared invalid or called into question by a federal court's issuance of a writ of habeas corpus.'" *Subgidio v. Graiani*, 2006 WL 648229, at *9 (S.D.N.Y. Mar. 16, 2006) (quoting *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (internal quotations omitted)). I therefore recommend that this case be DISMISSED without prejudice,

subject to re-filing once *Heck* is no longer an impediment.[2]

## Conclusion

For the reasons set forth above, I recommend that Defendants' motion to dismiss (Doc. 17) be GRANTED, and that this case be DISMISSED without prejudice. Rheaume's motion for reconsideration of his request for a stay while his § 2254 proceeding is pending (Doc. 11) is DENIED as moot.

Dated at Burlington, in the District of Vermont, this 6th day of June, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

---

[2] The Second Circuit has held that, in general, district courts should give *pro se* litigants leave to amend their complaints before facing final dismissal. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Here, however, because *Heck* bars any substantive constitutional claims against either Brouillette or her supervisors, amendment would be futile. *See Kevilly v. New York*, 410 F. App'x 371 (2d Cir. 2010). The Court should thus decline to grant leave to amend.